IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

STATE FARM FIRE AND CASUALTY COMPANY,

                Plaintiff,

   v.

AMAZON.COM, INC.,

                Defendant.

OPINION and ORDER

18-cv-261-jdp

---

Luke Cain bought a bathtub faucet adapter from a third-party seller on Amazon.com. The adapter malfunctioned and flooded Cain's home, which was insured by plaintiff State Farm and Casualty Company. State Farm paid to repair Cain's home, and now it has sued Amazon.com, Inc. for strict product liability under Wis. Stat. § 895.047. The question before the court is whether Amazon can be held liable under Wisconsin product liability law for a product sold by a third party through Amazon.com.

Amazon moves for summary judgment on two grounds: (1) that it is not a "seller" within the meaning of § 895.047; and (2) that it cannot be held liable for third-party content on its website because § 230(c)(1) of the Communications Decency Act prohibits treating it as a "publisher." Dkt. 16.

The court will deny the motion. Amazon does not merely provide a marketplace where third-parties sell to Amazon customers. Amazon was so deeply involved in the transaction with Cain that Wisconsin law would treat Amazon as an entity that would be strictly liable for the faucet adapter's defects, if, as in this case, the manufacturer cannot be sued in Wisconsin. And the Communications Decency Act does not immunize Amazon because State Farm does not seek to impose liability on Amazon merely because it posted some third-party content.

Although the court issued an order on July 10 telling the parties that it was denying summary judgment, Dkt. 44, neither side submitted any pretrial filings. Trial is scheduled for August 19, and the court is not moving the trial date. There is no longer time for a full round of pretrial submissions and responses, but the court will give the parties until July 30 to submit Rule 26(a)(3) disclosures, as well as all motions in limine, proposed voir dire questions, proposed jury instructions, and proposed verdict forms. The parties will have until August 2 to submit responses. The court will rule on any motions at the final pretrial conference on August 7.

## UNDISPUTED FACTS

The following facts are undisputed unless noted.

Defendant Amazon.com, Inc. (which the court will refer to as simply "Amazon") operates the massive online retail website Amazon.com. Amazon sells its own products on Amazon.com, but it also allows more than a million third-party sellers to use Amazon.com. This case involves one of those third-party transactions.

In October 2016, Luke Cain bought a swing-arm adapter for a bathtub faucet listed on Amazon.com. Cain bought the product from Amazon because he already pays for an "Amazon Prime" subscription, which covers the cost of shipping for many of the products sold on Amazon.com. Cain found the adapter by visiting Amazon's website and searching for the type of adapter he needed. Cain had seen the product listing for the adapter on a section of Amazon's website that displayed items "frequently bought together." Dkt. 35, ¶ 6.

The adapter had been listed on Amazon.com by XMJ, a Chinese company with no presence in the United States. XMJ found a source for the product, acquired it, wrote the

product description, and offered it for sale on Amazon.com. Under the terms of its contract with Amazon, XMJ was free to set the price for the adapter, but the price had to be "at least as favorable to Amazon Site users" as to anyone else. Dkt. 19-2, § S-4. Amazon did not at any time own the faucet adapter or any of XMJ's products.

Amazon provides payment processing for its third-party sellers. Amazon also provides an "A to Z" guarantee for items sold by third parties. This means that Amazon guarantees both timely delivery of products sold by third-party sellers and that the product will arrive in the condition described on Amazon.com. Dkt. 19-4. If a product is damaged, defective, or materially different than listed, the buyer can ask the third-party seller for a refund. But if the third-party seller does not respond, the buyer can return the product directly to Amazon. Amazon will process the return and refund the purchase price and cost of shipping.

XMJ also participated in the Fulfillment by Amazon (FBA) program, through which Amazon managed the order-fulfillment process. XMJ paid Amazon a fee to store its inventory at Amazon fulfillment centers in the United States and to ship products to buyers. For the FBA program, Amazon required XMJ to register each product it would sell, and Amazon reserved the right to refuse registration for any product, at Amazon's discretion. *Id.*, § F-1. Amazon also required XMJ to indemnify Amazon for any injury or property damage caused by XMJ products. *Id.*, §§ 6, F-10. When a customer purchased an XMJ product, Amazon would remove the product from storage and ship it directly to the customer in an Amazon-branded box.

In this case, Cain's purchase included the XMJ faucet adapter and another product sold by Amazon itself. Amazon shipped the products together in a single box. Amazon retained 30 percent of the purchase price for the XMJ faucet adapter as a service fee and sent the remainder to XMJ. About a month after the purchase, Cain's home flooded due to a defect in the adapter.

Plaintiff State Farm, who had insured Cain's home against property damage, paid for the repairs to Cain's home caused by the flooding.

ANALYSIS

This case requires the court to interpret the Wisconsin statute relating to strict product liability in light of the enduring effect of Wisconsin common law on the subject. The court begins with a quick historical recap.

In 1967, Wisconsin embraced the emerging doctrine of "strict product liability," according to which a manufacturer can be held liable for a defective product even without a showing of negligence or other fault on the part of the manufacturer. *Dippel v. Sciano*, 37 Wis. 2d 443, 155 N.W.2d 55 (1967). The strict product liability doctrine is based on a policy determination that, even without a showing of fault, it is appropriate to allocate the cost of defective products to the manufacturer rather than the injured party. The essential principles underlying the doctrine are that the manufacturer can adjust the price of the product to reflect the risks posed by the product and that such cost-shifting will provide the manufacturer an incentive to improve safety. *Horst v. Deere & Co.*, 2009 WI 75, ¶ 24, 319 Wis. 2d 147, 769 N.W.2d 536.

Historically, product liability in Wisconsin was a matter of common law, with the strict liability doctrine patterned on § 402A of the Restatement (Second) of Torts. In 2011, the Wisconsin legislature passed a tort reform bill, which, among other things, codified aspects of products liability law. 2011 Wisconsin Act 2, §§ 29–31 (creating Wis. Stat. § 895.045(3), § 895.046, and § 895.047). The strict product liability doctrine was codified in Wis. Stat. § 895.047. Section 895.047(1) changed the applicable standard for a defective

4

product from the "consumer expectation" standard in the Restatement (Second) of Torts to the "reasonable alternative design" in the Restatement (Third). The difference between these two standards is not at issue in Amazon's motion for summary judgment. The new statute did not endorse the Restatement (Third) of Torts with respect to any other aspect of product liability law.

For our purposes, the important part of the statute is § 895.047(2), which codifies the common law principle that strict liability can extend to entities besides the manufacturer under certain circumstances. That subsection provides:

> (2) LIABILITY OF SELLER OR DISTRIBUTOR.
>
> (a) A seller or distributor of a product is not liable based on a claim of strict liability to a claimant unless the manufacturer would be liable under sub. (1) and any of the following applies:
>
>> 1. The claimant proves by a preponderance of the evidence that the seller or distributor has contractually assumed one of the manufacturer's duties to manufacture, design, or provide warnings or instructions with respect to the product.
>>
>> 2. The claimant proves by a preponderance of the evidence that neither the manufacturer nor its insurer is subject to service of process within this state.
>>
>> 3. A court determines that the claimant would be unable to enforce a judgment against the manufacturer or its insurer.
>
> (b) The court shall dismiss a product seller or distributor as a defendant based on par. (a) 2. if the manufacturer or its insurer submits itself to the jurisdiction of the court in which the suit is pending.

Wis. Stat. § 895.047(2). The gist of this subsection is that a plaintiff can recover from a seller or distributor of a defective product, only if the seller or distributor undertakes the manufacturer's duties, or if the manufacturer is unavailable or judgment proof.

5

In our case, all agree that that the unknown manufacturer of the faulty adapter would be liable under subsection (1), and that neither the manufacturer nor its insurer is subject to service of process within Wisconsin. So the question is whether Wisconsin law allows State Farm to recover from Amazon in the absence of the responsible manufacturer.

**A.  Amazon may be held liable under Wis. Stat. § 895.047**

This case is in federal court on the basis of diversity jurisdiction, so the court applies the law of the forum state, Wisconsin. And, if Wisconsin law is unclear, the court must predict how the Wisconsin Supreme Court would decide the issue. *Cmty. Bank of Trenton v. Schnuck Markets, Inc.*, 887 F.3d 803, 811 (7th Cir. 2018).

The question begins as one of statutory interpretation. Wisconsin courts start with the language of the statute, and if its meaning is plain that is the end of the analysis. *State ex rel. Kalal v. Circuit Court for Dane Cty.*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. Words get their "common, ordinary, and accepted meaning," unless they are technical terms or specially defined, in which case they get their technical or special definitions. *Id*. Context is important, and so is the structure of the statute under interpretation. Therefore, statutory language must be interpreted as a sensible part of a whole, in relation to surrounding and closely related statutory sections. *Id*. at ¶ 46. The purpose of the statute can provide clues to its meaning; the purpose is sometimes expressly stated, and often it's clear from the terms of the statute itself. *Id*. at ¶ 49. It is appropriate to consider the history of the introduction of, and amendments to, the statute as part of the plain meaning analysis. *Richards v. Badger Mut. Ins. Co.*, 2008 WI 52, ¶ 22, 309 Wis. 2d 541, 749 N.W.2d 581. If the analysis of these intrinsic features of the statute yields a clear meaning, the court need not, and should not, resort to extrinsic evidence, such as items of legislative history, which might provide commentary on the

meaning of the statute. A court may resort to extrinsic sources of meaning only if analysis of the intrinsic evidence demonstrates ambiguity. *Kalal*, 2004 WI 58, ¶ 51.

The key dispute is whether Amazon qualifies as a "seller" or "distributor." Amazon says that "seller" means one who holds title to property and transfers that title to another. And because Amazon never takes title to the goods sold by third parties, it cannot be a seller. But State Farm contends that "seller" is not so restrictive, and the concept includes entities involved in a sale, even if the entity does not take or transfer actual ownership.

The statutory sections devoted to product liability do not expressly define "seller" or "distributor." In some cases, the common meaning of a term may be ascertained from dictionary definitions. *Id.*, ¶ 53. Both sides submit competing dictionary definitions of "seller" and "distributor."[1] But the definitions are inconsistent, and it's not clear which, if any, would apply in the context of strict product liability. The terms also appear in other Wisconsin statutes, but those definitions are also varied. *See* Wis. Stat. § 402.103(d) (defining "seller" as "a person who sells or contracts to sell goods"); Wis. Stat. § 402.106(6) (defining "sale" as the "passing of title from the seller to the buyer for a price"); Wis. Stat. §§ 139.01(9), 139.30(12) (defining "sale" more broadly to include "any shift, device, scheme or transaction" by which a product can be obtained). Courts interpreting the language of similar statutes in other states

---

[1] Amazon relies on definitions from Black's Law Dictionary 1567 (10th ed. 2014) ("seller" is "[s]omeone who sells or contracts to sell goods . . . the transferor of property in a contract of sale"); *id.* ("sell" is "[t]o transfer (property) by sale"); *id.* at 576–77 ("distributor" is a "wholesaler, jobber, or other manufacturer or supplier that sells chiefly to retailers and commercial users."). State Farm does not provide a definition for "sell," but it says that "seller" is defined as "one that offers for sale," *see* https://www.merriam-webster.com/dictionary/seller (accessed on June 27, 2019), and "distributor" is "a person, firm, etc., engaged in the general distribution or marketing of some article or class of goods," *see* https://www.dictionary.com/browse/distributor (accessed on June 27, 2019).

7

have come to different conclusions. *Compare Stiner v. Amazon.com, Inc.*, 120 N.E.3d 885, 897 (Ohio Ct. App. 2019) (A "sale" under the Ohio Products Liability Act requires transfer of title), *with Fox v. Amazon.com, Inc.*, --F.3d.--, No. 18-5661, 2019 WL 2896326, at *7 (6th Cir. July 5, 2019) (A "seller" under the Tennessee Product Liability Act means any individual "regularly engaged in exercising sufficient control over a product in connection with its sale, lease, or bailment, for livelihood or gain.").

So neither the statutes nor dictionaries provide decisive, or even helpful, definitions. But the structure and purpose of the product liability statutes are informative. The language of § 895.047(2) is phrased in negative form. It says that sellers and distributors are *not* liable under strict liability unless certain conditions are met. This is significant because nothing in this subsection affirmatively defines the class of entities that are liable under strict liability. This suggests that the purpose of subsection (2) was to limit *when* a plaintiff may target a nonmanufacturer defendant, but not *who* may be held liable as a nonmanufacturer defendant.

Looking more broadly at the structure of the statute, under Wis. Stat. § 895.047, the manufacturer is the preferred target, and neither sellers nor distributors are liable for product defects if the manufacturer can be haled into a Wisconsin court. So sellers and distributors are liable, not because of any particular activity on their part, but because they are proxies for the absent manufacturer. This structure suggests that, in the absence of the manufacturer, the entity responsible for getting the defective product into Wisconsin is liable.

A related statutory section, Wis. Stat. § 895.046, also suggests that Wisconsin product liability law is broadly remedial, and not limited to a narrow, specially defined class of defendants. Section 895.046 is an umbrella section that applies to any action in which a claimant alleges that the manufacturer, distributor, seller, or promoter of a product is liable for

damages caused by a product, including strict product liability claims brought under § 895.047. The statute was enacted in conjunction with § 895.047 as part of the 2011 tort reform bill. 2011 Wisconsin Act 2, §§ 29–31. Section 895.046 now includes a statement of legislative purpose, subsection (1g). But subsection (1g) was not part of § 895.046 as originally enacted in 2011; it was added later as part of the 2013 budget bill. 2013 Wis. Act 20, § 2318f. The main point of 2013 Wis. Act 20, § 2318f was to further limit the application of the risk contribution theory, which allows plaintiffs to recover against manufacturers when the plaintiff is unable to identify the manufacturer that made the specific product that caused the plaintiff's injury. The statement of legislative purpose repudiates the Supreme Court's application of the risk contribution theory to lead paint manufacturers in *Thomas ex rel. Gramling v. Mallett*, 2005 WI 129, 285 Wis. 2d 236, 701 N.W.2d 523. An amendment to subsection (2) purported to apply § 895.046 retroactively, apparently to cut off pending litigation against lead paint makers.[2] Notwithstanding the curtailment of the risk contribution theory, the statement of legislative purpose affirms the remedial purpose of Wisconsin strict product liability law. It cites Article I, Section 9, of the Wisconsin Constitution, which provides in pertinent part that "Every person is entitled to a certain remedy in the laws for all injuries, or wrongs which he may receive in his person, property, or character." The statement of legislative purpose also states the legislative intent to embrace the common law tradition of Wisconsin product liability law. The bottom line is that nothing in Wis. Stat. §§ 895.046 or 895.047, even as amended by 2013 Wis. Act 20, § 2318f, restricts those liable for defective products to some narrow class of specially defined sellers or distributors.

---

[2] The retroactive application of § 895.046 was held unconstitutional in *Gibson v. American Cyanamid Co. et al.*, 760 F. 3d 600 (7th Cir. 2014).

Because the terms and structure of the statute does not completely answer the central question, the court will turn to Wisconsin caselaw. As demonstrated by *Richards*, 2008 WI 52, ¶ 30, a legislative codification of common law does not supersede previous caselaw, at least where the caselaw does not contradict the statute. "It is axiomatic that a statute does not abrogate a rule of common law unless the abrogation is clearly expressed and leaves no doubt of the legislature's intent." *Fuchsgruber v. Custom Accessories, Inc.*, 2001 WI 81, ¶ 25, 244 Wis. 2d 758, 628 N.W.2d 833. And that principle is particularly apt here, because § 895.046(1g) directly expresses the legislative intent to "return tort law to its historical, common law roots." Accordingly, the court considers Wisconsin appellate court decisions that relate to the entities that can be held liable for strict product liability. Those decisions are useful guides to statutory interpretation. *See Richards*, 2008 WI 52, ¶ 30 (citing *Strenke v. Hogner*, 2005 WI 25, ¶¶ 15, 16, 19, 279 Wis.2d 52, 694 N.W.2d 296).

*Kemp v. Miller*, 154 Wis.2d 538, 453 N.W.2d 872, 879 (1990), is particularly instructive. In that case, the plaintiff, Kemp, had rented a Ford automobile from Budget Rent-A-Car, Inc. Kemp was injured in an accident, which she contended was caused by a defective tie-rod which impaired the Ford's steering. She sought to hold Budget strictly liable for the defective automobile. Budget contended that it could not be strictly liable because it was not a seller of the automobile. Kemp contended that the concept of "seller" should be construed more broadly to effectuate the purposes of the strict liability doctrine. The Supreme Court agreed with Kemp, reasoning that a lessor, like a seller, bears responsibility for putting a defective product into the stream of commerce. The *Kemp* court explained that lessors and sellers are similar in material ways: (1) both sellers and lessors "introduce potentially dangerous instrumentalities into the stream of commerce;" (2) like sellers, lessors are in a better position

than the end user to allocate the cost of product dangerousness by purchasing insurance or adjusting the price of the lease; and (3) both sellers and lessors implicitly represent that their products are safe by advertising them and providing them to the market. *Id*. *Kemp* lays to rest Amazon's argument that under Wisconsin law a formal transfer of ownership is required to hold an entity strictly liable for a defective product. And decisions from other Wisconsin courts, both before and after *Kemp*, have also endorsed the principle that strict liability derives from the act of putting the defective product into the stream of commerce. *See, e.g., Mulhern v. Outboard Marine Corp.*, 146 Wis. 2d 604, 432 N.W.2d 130, 133–34 (Wis. Ct. App. 1988); *St. Clare Hosp. of Monroe, Wis. v. Schmidt, Garden, Erickson, Inc.*, 148 Wis.2d 750, 437 N.W.2d 228, 231 (Wis. Ct. App. 1989) (cited with approval in *Fuchsgruber*, 2001 WI 81, ¶ 22); *Sedbrook v. Zimmerman Design Grp., Ltd.*, 190 Wis. 2d 14, 526 N.W.2d 758, 763 (Wis. Ct. App. 1994).

This doesn't mean that an entity is strictly liable in Wisconsin if it plays only a peripheral role in putting a defective article into the stream of commerce. Wisconsin courts have held the contrary. *See, e.g., Estate of Cook by Cook v. Gran-Aire, Inc.*, 182 Wis. 2d 330, 513 N.W.2d 652, 656 (Wis. Ct. App. 1994) (flight school not strictly liable for defective plane used during lessons); *Rolph v. EBI Companies*, 159 Wis. 2d 518, 464 N.W.2d 667, 671 (1991) (technician hired to tune-up a previously purchased, already defective machine). Federal courts applying Wisconsin law have also held that peripheral entities are not strictly liable. *See, e.g., Geboy v. TRL Inc.*, 159 F.3d 993, 998 (7th Cir. 1998) (broker who located and advertised used farm equipment); *Pelnar v. Rosen Sys., Inc.*, 964 F. Supp. 1277, 1283 (E.D. Wis. 1997) (defendant who appraised and auctioned machinery for seller).

So the question is this: is Amazon a peripheral entity like an auctioneer or is it an integral part of the chain of distribution more akin to the lessor in *Kemp*? The undisputed facts

11

show that Amazon is an integral part of the chain of distribution, an entity well-positioned to allocate the risks of defective products to the participants in the chain.

Amazon provided the only conduit between XMJ, the Chinese seller, and the American marketplace. Without Amazon, XMJ products would not be available at all in Wisconsin. Amazon did not directly set the price for the faucet adapter, but it set the substantial fees that it would retain for itself, so it was positioned to insure against the risk of defective products. As part of the FBA agreement, Amazon required XMJ to register each product, and Amazon reserved the right to refuse to sell any of them. So Amazon was in a position to halt the flow of any defective goods of which it became aware. And Amazon took steps to protect itself by requiring XMJ to indemnify Amazon. Amazon also implicitly represented that the adapter was safe by listing it for sale among its own products, and it expressly guaranteed timely delivery in good condition. And, under Amazon's A to Z guarantee, Amazon agreed to process returns and refunds if XMJ did not respond. Amazon took on all the roles of a traditional—and very powerful—reseller/distributor. The only thing Amazon did not do was take ownership of XMJ's goods.

In states in which the formal transfer of ownership is a prerequisite to strict liability, Amazon would prevail. *See, e.g., Erie Ins. Co. v. Amazon.com, Inc.*, 925 F.3d 135, 143 (4th Cir. 2019) (transfer of ownership required under Maryland law). But *Kemp* and other Wisconsin cases show that Wisconsin courts would not require formal transfer of ownership. Amazon was a critical component of the chain of distribution, deeply involved in the transaction with Cain; holding Amazon liable serves the purposes of the strict liability doctrine that Wisconsin courts embraced in 1967. Because neither the unknown manufacturer nor XMJ is amenable to suit in this state, Wisconsin law would hold Amazon strictly liable for the defective faucet adapter.

Amazon contends that no other court has held it strictly liable for third-party sales through Amazon.com. None of those cases are binding precedent. And most of the cases cited by Amazon did not involve transactions that were part of the FBA program, through which Amazon plays a particularly significant role in the distribution of third-party products. After briefing was completed, the Third Circuit concluded that Amazon was strictly liable for a defective product sold by a third-party seller, applying principles from § 402A of the Restatement (Second) of Torts, and Pennsylvania common law. *Oberdorf v. Amazon.com Inc.*, No. 18-1041, 2019 WL 2849153, at *1 (3d Cir. July 3, 2019). The Third Circuit's reasoning, particularly its careful consideration of the factors in § 402A of the Restatement (Second) of Torts, would be persuasive under Wisconsin law, too. *Oberdorf's* reasoning is very similar to *Kemp's*.

Amazon did not own the product that XMJ sold to Cain. But in light of the facts of this case, that is a mere technicality. At least for products sold under Amazon's FBA program, Amazon otherwise serves all the traditional functions of both retail seller and wholesale distributor. Like the lessor in *Kemp*, Amazon bears responsibility for putting the defective product into the stream of commerce in Wisconsin, and Amazon is well positioned to allocate among itself and its third-party sellers the risks that products sold on Amazon.com would be defective. Wisconsin law is clear that it would not leave Cain (and his insurer) to bear that risk alone.

**B. Amazon is not immune under the Communications Decency Act**

Amazon contends that even if it were a seller under Wisconsin product liability law, it is immune from liability under the Communications Decency Act (CDA). 47 U.S.C. § 230. Section 230(c)(1) of the CDA immunizes "interactive computer services" from any claim that

13

would treat the defendant as "the publisher or speaker" of third-party content. *Daniel v. Armslist, LLC*, 2019 WI 47, ¶ 42, 386 Wis. 2d 449, 926 N.W.2d 710. The policy underlying the CDA is that the development of internet-based services would be facilitated by providing immunity from liability for third-party content. 47 U.S.C. § 230(b).

Amazon says that it is entitled to CDA immunity because the product description for the defective adapter was written by, and provided to Amazon by, XMJ. Thus, Amazon's argument goes, it cannot be held liable for the content of the product description. But State Farm is not seeking to treat Amazon as the publisher of the product description; nor is State Farm attempting to hold Amazon liable for the product description at all. Rather, State Farm is seeking to hold Amazon liable for putting a defective product into the stream of commerce. "In strict product liability actions, the 'act' to which the seller's responsibility attaches is not an act of negligence. If indeed it is an act at all, it is simply the act of placing or maintaining a defective product in the stream of commerce." *Fuchsgruber*, 2001 WI 81, ¶ 24 (internal quotations omitted). Amazon's active participation in the sale, through payment processing, storage, shipping, and customer service, is what makes it strictly liable. This is not activity immunized by the CDA.

Amazon cites three cases in which it says courts applied the CDA to claims involving products listed by third-party sellers on Amazon's website. But in one of the cases, the court did not actually rule on the issue. *Stiner*, 120 N.E.3d 885. In another, the court applied the CDA only to dismiss negligence and misrepresentation claims. *Eberhart v. Amazon.com, Inc.*, 325 F. Supp. 3d 393, 400 (S.D.N.Y. 2018). And the third is a district court case that has been reversed. *Oberdorf v. Amazon.com, Inc.*, 295 F. Supp. 3d 496 (M.D. Pa. 2017), *aff'd in part, vacated in part,* and *remanded*, 2019 WL 2849153. Courts that have considered whether the CDA

14

applies to strict liability claims against Amazon have held that it does not. *See, Oberdorf*, 2019 WL 2849153; *Erie Ins. Co.*, 925 F.3d at 140; *McDonald v. LG Elecs. USA, Inc.*, 219 F. Supp. 3d 533 (D. Md. 2016).

Amazon also cites the Wisconsin Supreme Court's recent decision in *Daniel v. Armslist*, which held that the CDA preempted a gun victim's negligence claims against a website that hosted classified ads for gun sales. 2019 WI 47. But unlike this case, there was "no allegation that Armslist's participation in the transaction went beyond creating a forum for Linn's advertisement and failing to prohibit Radcliffe from viewing the advertisement." *Id.*, ¶ 54. The only action taken by the defendant was the publication of information. And the plaintiff's theory of liability hinged on whether that defendant was negligent in failing to screen its advertisements before publishing them or limiting who was allowed to access the publications. State Farm's product-liability claim does not require the court to consider whether Amazon was negligent in publishing XMJ's product listing, or whether it was responsible for publishing it at all.

CONCLUSION

Amazon has transformed retailing in the United States, and in the process it has taken on many roles that had been served by brick-and-mortar stores, shopping malls, and wholesalers and distributors. This has been a boon to consumers, because through Amazon consumers can purchase a vast range of products, supplied by manufacturers and sellers across the globe, that would otherwise not be available to Wisconsin buyers. But what recourse does a Wisconsin buyer have if one of these third-party products is defective and causes injury or damage? If, as

15

in this case, the manufacturer and the third-party seller are foreign entities that cannot be sued in Wisconsin courts, Amazon's answer is that there is no recourse.

This answer cannot be squared with Wisconsin's law of strict product liability. Particularly when Amazon provides order fulfillment services through its FBA program, Amazon is properly considered a seller for purposes of Wisconsin strict product liability law for products sold by third parties through Amazon.com. And Amazon is not immune under the Communications Decency Act for claims that it sold a defective product.

## ORDER

IT IS ORDERED that:

1. Defendant Amazon.com, Inc.'s motion for summary judgment, Dkt. 16, is DENIED.

2. Motions in limine and other pretrial filings are due on July 30, 2019. Responses are due on August 2, 2019.

Entered July 23, 2019.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge